**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**ANGELA MARIE LAMB**                                                        **PLAINTIFF**

**V.**                                                      **CAUSE NO.: 1:07CV125-SA-JAD**

**LOWNDES COUNTY SCHOOL DISTRICT**                               **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>

Comes now before this Court, Defendant's Motion for Summary Judgment [26]. After reviewing the motions, responses, rules, and authorities, the Court makes the following findings:

*Factual Background*

Plaintiff Angela Marie Lamb[1] was hired as a Lowndes County School District high school counselor on March 7, 1997, by Mike Halford, the principal of New Hope High School. Halford was later promoted to Lowndes County School District Superintendent, and Bobby Eiland was hired to replace him as principal of New Hope during the 2004-2005 school year.

In February of 2006, the Social Security Administration requested employment information from the Lowndes County School District regarding Angela Marie Lamb's retirement. Subsequently, in March of 2006, Lamb submitted retirement documents to the Lowndes County School District personnel department. Specifically, the Plaintiff's documentation revealed a projected retirement date of July 1, 2006. She also applied for continuation of medical benefits and completed an application for enrollment in Medicare. The filing of those documents noted that Lamb had zero unused uncompensated personal and major medical leave days available.

As high school guidance counselor, Lamb was involved in the administration of school-wide

---

[1] Plaintiff's name throughout the pleadings, motions, and discovery sometimes appears as "Ann Marie Lamb."

testing, rendered mandatory by the federal "No Child Left Behind" program. Her specific duties involved gathering the test materials from the district office, maintaining the security of those materials, and distributing and assigning tests, answer sheets, pencils, and scrap paper to the students. She also served as a testing aide and monitor during the spring testing and fall make-up testing. After the testing period was complete, Lamb would gather all materials and secure them for proper storage.

In a memorandum dated April 17, 2006, Principal Eiland admonished Lamb for her excessive absenteeism and expressed concern about her missing training for the upcoming spring testing. The memo is replicated in its entirety below:

> To: Dr. Lamb
>
> From: Bobby Eiland
>
> Subject: Absenteeism
>
> Date: Monday, April 17, 2006
>
> Your absenteeism this year is too high. According to the marathon report you have missed 34 days this year (17% of a 200-day contract) so far.
>
> I am particularly concerned with your not being here for the test training and when we have to sign out the material. Out of the four Subject Area Tests we give, three of them are mainly your students. On March 13 you were out the day we had the test training at central office and picked up the test materials for the English 2 Writing Test. Today you were out again when we had the test training and picked up the rest of the subject area test. Ms Cole and I took care of the tests today and got them locked in the vault.
>
> Your high absenteeism has a negative effect on our school. Please take care of this.
>
> Thank You,
>
> Bobby Eiland

Lamb immediately responded that she was retiring effective June 2. Lamb was 67 years old at the

time of retirement.

On June 12, 2006, Lamb filed a complaint with the Equal Employment Opportunity Commission alleging she was forced to retire due to a hostile work environment from continued discrimination based on her age. She specifically alleged that Eiland's memo was proof of the discrimination suffered as a result of her age.

After receiving her right to sue letter from the EEOC, Lamb filed this suit in federal court alleging she was constructively discharged in violation of Age Discrimination in Employment Act ("ADEA"), her employment contract was breached, she endured emotional distress, and Eiland's memo constituted libel and/or slander per se. On April 3, 2008, the Defendant filed a motion for summary judgment. Because the Plaintiff conceded her claims of emotional distress and breach of employment contract, the analysis below will only focus on those claims that remain: violation of the ADEA and libel and/or slander per se.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes

3

demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548; Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not adequate substitutes for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

*Discussion and Analysis*

*A. ADEA*

The Age Discrimination in Employment Act of 1967 ("ADEA") provides "it shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). Specifically, the ADEA is intended to protect employees over forty years of age from discriminatory practices.

Intentional discrimination can be proved through either direct or circumstantial evidence. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). If the record is devoid of direct evidence, the plaintiff must bring forth circumstantial evidence to carry his or her burden. Id. A case that involves only circumstantial evidence is governed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Applying the McDonnell Douglas framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. Id. at 802, 93 S. Ct. 1817. Plaintiff must demonstrate that he or she (1) suffered an adverse employment action; (2) was qualified for the

position; (3) was within the protected class at the time of the decision; and, (4) that the person selected was not within the protected class, or, that others similarly situated but not within the protected class were more favorably treated, or, that the plaintiff was otherwise discharged because of her age. Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001); Eaves v. K-Mart Corp., 193 F. Supp. 2d 887, 893 (S.D. Miss. 2001).

Three of the four elements of Plaintiff's prima facie case are undisputed. She is a member of the class protected by the ADEA, she is fully qualified for the position of guidance counselor, and she was subsequently replaced by a person younger than she. Lamb, however, must present sufficient evidence to prove that she was discharged. Stephens v. C.I.T. Group/Equip. Finan., Inc., 955 F.2d 1023, 1027 (5th Cir. 1992).

When an employee resigns or retires, as Lamb did, she may satisfy the discharge requirement by proving constructive discharge. Id. To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign. McKethan v. Texas Farm Bureau, 996 F.2d 734, 740-41 (5th Cir. 1993). Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but the following factors are relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not. Id. at 741.

Lamb asserts that she was constructively discharged but provides no proof that her retirement was anything but voluntary. Lamb asserts that she did turn in her Letter of Intent to renew her employment contract in March of 2006. However, the records show that Lamb at least notified the Social Security Administration of her desire to retire before their request for information dated February 13, 2006. Moreover, she filled out other retirement papers in March of that year.

Throughout her deposition, the Plaintiff noted her disdain for Bobby Eiland. She continuously noted that he was unethical, unprofessional, inept and incompetent. She noted that his treatment of her was attributable to a difference in his management style from what she thought a principal should have. Indeed, in her deposition and her EEOC charge, Lamb noted that she "chose to retire rather than implicate myself in an unprofessional manner," and "rather than commit any kind of insubordinate act, that it was best for me to go ahead and retire." Most pertinently, Lamb specifically stated that Principal Eiland's conduct was not premised on the fact that she was 67 years old.

Even if the Plaintiff could overcome the evidence of her retirement being voluntary, she has failed to make a sufficient showing to establish the existence of an objectively intolerable work environment. Both parties agree that in the case *sub judice*, the sixth factor of constructive discharge, i.e. badgering, harassment, or humiliation by the employer calculated to encourage a resignation, applies in this situation. Lamb asserts she was subject to "verbal tirades" by Principal Eiland, carried a heavier work load than her junior colleagues, was treated differently than other faculty members favored by Eiland, and held more committee appointments than the younger guidance counselor.

Throughout all the evidence presented in the motion, response, and reply to summary judgment, the Plaintiff makes only one allegation of a "verbal tirade" against her by Bobby Eiland. She asserts that she confronted Principal Eiland regarding the unfair nature of his appointments to committees within the school district. She noted that while she had six committee memberships, her younger colleague had none. Lamb contends that the principal began shouting at her when she suggested that they take their conflict up with the superintendent. Lamb further notes that when she did discuss the committee assignments with the Superintendent, he told her that she should stick up for herself or no one else would. In her deposition, Lamb admitted that service on those committees was not within the scope of her job duties, she was not forced to be on the committees, and further, her involvement in those committees stemmed from her wanting to be a good employee.

Lamb also contends that she carried over 65% of the workload between the two guidance counselors - herself and Norma Morrison Cole, who was 38 at the time Lamb retired. Lamb asserts that she was the guidance counselor for ninth and tenth grade students at New Hope High School, while Cole was the counselor for the eleventh and twelfth grades. Lamb noted that under the prior principal, each year the guidance counselors rotated grades so that the students had the same guidance counselor throughout their high school career. Upon hiring the younger guidance counselor, the prior principal thought it necessary to leave Cole as the ninth and tenth grade counselor for more time in order to get experience. Therefore, when Eiland began as principal, Cole had recently rotated into position as the eleventh and twelfth grade counselor, and Lamb counseled the ninth and tenth grades. Eiland did not implement the rotation of counselors once he joined the New Hope High School administration. Therefore, Lamb admits that Eiland just maintained the

7

status quo with regard to the counselors when he became principal.

Lamb also contends that she was treated differently than the other guidance counselor, mainly because Cole was Eiland's "pet." Specifically, Lamb noted that Eiland allowed Cole to come and go at the school whenever she pleased, in contradiction to the posted hours of 7:30 a.m. to 3:30 p.m. Also, Plaintiff claims Cole never filled out leave applications or leave sheets. Lamb contends another of Eiland's favorites, a coach, replaced an experienced teacher. Plaintiff asserts that the superintendent received several complaints that the coach was not teaching but nothing was done to the coach. In her deposition, Lamb admitted that principals did have discretion to alter arrival and dismissal times for individual employees and later admitted that the coach held a teaching certificate and was qualified to teach.

Even reviewing all of Plaintiff's contentions as true, Lamb's situation hardly rises to the level of a hostile work environment. There is no objective evidence that Eiland intended to badger, harass, or humiliate Lamb into retirement because of her age, or for any other reason. As noted above, conclusory allegations are not an adequate substitute for specific facts showing a genuine issue for trial. See TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002). Thus, Lamb has failed to put forth enough evidence to allege discrimination on the basis of age, and that claim is hereby dismissed.

*B. Libel and/or Slander Per Se*

The Plaintiff additionally alleges that the Defendant, by and through its agents, defamed the good name and reputation of the Plaintiff by sending around a derogatory memorandum that she was not performing as she was supposed to be due to absences from work.

8

Libel is a defamatory statement in writing. McCullough v. Cook, 679 So. 2d 627, 630 (Miss. 1996). The following elements must be established to maintain a defamation claim:

(1) a false and defamatory statement concerning the plaintiff;

(2) an unprivileged publication to a third party;

(3) fault amounting at least to negligence on the party of the publisher; and

(4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Chatham v. Gulf Pub. Co., 502 So. 2d 647, 649 (Miss. 1987) (quoting Restatement (Second) of Torts, § 558 (1977)). Defamation is a statement which tends to injure one's reputation "as to lower him in the estimation of another or to deter third persons from associating or dealing with him." Eselin-Bullock & Assocs., 604 So. 2d 236, 241 (Miss. 1992) (quoting Whitten v. Commercial Dispatch Pub. Co., 487 So. 2d 843, 845 (Miss. 1986)).

Plaintiff fails to raise a genuine issue of material fact as to the defamatory nature of Eiland's memorandum addressed to her. She does not contend that the information contained therein is false. In fact, Plaintiff notes that she did take off work to recover from double hernia surgery, knee surgery, and other medical problems. She has not contested any of the other comments regarding her attendance for test training or otherwise. Moreover, she admitted that the rating of the New Hope High School was in large part dependent on the results of the federally mandated testing, and that as a guidance counselor, she did have extensive duties relating to the testing.

Even if Plaintiff could show that the April 17 Memorandum from Eiland was defamatory, no proof has been presented that the memorandum was published to any third party. Lamb notes that the memorandum was "not put in an envelope, stapled and put into the box on the front of my office." Lamb has not alleged nor asserted that any particular third party read the memo. The Court

cannot accept conclusory allegations and accusations as proof of a genuine issue of material fact.

Even if the memorandum was found to raise an issue of fact, Defendant asserts that it is entitled to qualified immunity. "This Court has recognized a qualified privilege protecting communications between employers and employees." Holland v. Kennedy, 548 So. 2d 982, 987 (Miss. 1989). On privilege, the Mississippi Supreme Court has provided as follows:

> [A] person who publishes words which would otherwise be defamatory may be excused from liability because of privilege. There are two types of privileges -- absolute and qualified or conditional . . . . A qualifiedly or conditionally privileged communication is one made in good faith on any subject matter on which the person communicating has an interest or in reference to which he has a duty to protect to a person having a corresponding interest or duty, even though it contained matters, which, without this privilege, would be actionable, and although the duty is not a legal one, but only moral and social duty of imperfect obligation.

J.C. Penney Co. v. Cox, 246 Miss. 1, 148 So. 2d 679, 682 (1963). Although "the law guards jealously the enjoyment of a good reputation, public policy, good morals, the interests of society, and sound business principles demand that an employer, or his representative, should be permitted to discuss freely with an employee charges made against an employee affecting the latter's employment." Benson v. Hall, 339 So. 2d 570, 572 (Miss. 1976).

It is the opinion of this court that Plaintiff has not overcome this qualified privilege. The April 17 Memorandum constitutes a communication between employer and employee regarding duties specific to Lamb's position. There is no proof or implication that such statements were made in bad faith or with malice. Accordingly, Defendant is protected by the qualified immunity extended to employers and, therefore, is immune from Plaintiff's libel action.

Slander is a defamatory statement published by spoken words. Smith v. Jones, 335 So. 2d 896, 897 (Miss. 1976). Spoken words which are actionable irrespective of special harm are known

as "slander per se." Baugh v. Baugh, 512 So. 2d 1283, 1285 (Miss. 1987). One of the classes of words which may constitute slander per se consists of spoken words suggesting improper conduct in one's business or trade. Id. at 1285 & n 2. Such words are slander per se (that is, actionable per se) if they were clearly directed at the plaintiff and the defamation was clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture. Id.; Ferguson v. Watkins, 448 So. 2d 271, 275 (Miss. 1984). As Plaintiff fails to allege specifically any oral defamatory statements, she has failed to raise a genuine issue of material fact as to this cause of action. Moreover, as noted above, the falsity or defamatory nature of the comments between Eiland and Lamb has not been established in the record.

*Conclusion*

Plaintiff's age discrimination claim and state law slander per se and libel claims must be dismissed as a matter of law. Plaintiff has failed to make a sufficient showing to establish the existence of elements essential to her case and on which she will bear the burden of proof at trial. Plaintiff cannot overcome Defendant's qualified immunity as to the libel and slander per se claims, and even if she could, the statements she regards as defamatory have not been alleged to be false or published. Accordingly, Plaintiff's claims against Defendant are dismissed and this case is CLOSED.

A separate order shall issue forthwith this day.

SO ORDERED, this the __2nd__ day of July, 2008.

　　　　　　　　　　　　　　　　　　 **/s/ Sharion Aycock**
　　　　　　　　　　　　　　　　　　 **U.S. DISTRICT JUDGE**